[No. 9164.  Department One.  November 15, 1910.]

Louise L. Biggs *et al.*, *Respondents*, v. David M. Hoffman
*et al.*, *Appellants.*[1]

Vendor and Purchaser—Bona Fide Purchaser—Notice—Burden
of Proof. A purchaser of lots with actual notice of a lien thereon
has the burden of proving that one of his predecessors in interest
was a *bona fide* purchaser without notice, if he would free the lots
of the lien.

Appeal—Harmless Error—Parties Affected. Error in ruling as
to which one of the plaintiffs was the owner of a lien sought to be
foreclosed cannot be assigned upon an appeal by the defendants.

Lis Pendens—Effect on Prior Liens—Mortgages—Foreclosure.
A *lis pendens* in a mortgage foreclosure suit does not affect a party-
wall lien prior to the mortgage, the owners of the lien not being
made parties to the mortgage foreclosure.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered June 27, 1910, upon findings
in favor of the plaintiffs, after a trial on the merits before
the court without a jury, in an action to foreclose a party-
wall lien. Affirmed.

*Theo. D. Powell,* for appellants.

*C. M. Riddell* and *Boyle, Warburton & Brockway,* for re-
spondents.

Gose, J.—This is an action to foreclose a lien created by a
party-wall contract. On April 12, 1889, Samuel Isaacs,
Gertrude, his wife, and Alexander and Morris Isaacs, were the
owners of lot 23 in block 1104 in the city of Tacoma, and the
Tacoma Land Company was owner of the adjoining lot 22.

[1]Reported in 111 Pac. 576.

On that day the respective owners of the two lots entered into a party-wall contract, which provided that the Isaacs should erect a party wall, one-half of which should rest upon each of said lots; that they should keep a true account of the cost thereof and that, when the land company or its legal representatives or assigns should use the wall or any part of it, it or they should first pay to the Isaacs one-half of the cost thereof; that the contract should be construed to create in favor of the Isaacs a lien upon lot 22 for one-half of the cost of the wall, and that the benefits and burdens of the contract should annex to and run with the land, and should be binding upon the heirs, legal representatives, and assigns of the respective parties. This contract was properly acknowledged, and will hereafter be referred to, as "the contract."

On the day following, the contract was entered in an index called "Index to Deeds," and was recorded in Deed Records, but was not entered in the mortgage index or recorded in the "Mortgage Records." Later, Samuel Isaacs and wife conveyed their interest in lot 23 to Alexander and Morris Isaacs, without reference to the contract. Thereafter Alexander and Morris Isaacs assigned a one-half interest in the contract to the respondent Williams. At a later date, Alexander and Morris Isaacs conveyed lot 23 to the respondents Biggs. The deed specifically assigned all the right, title, and interest of the grantors in the "party wall" and "in and to any and all contracts . . . respecting said party wall." After the execution, filing, and recording of the contract as heretofore stated, the Tacoma Land Company mortgaged lot 22 to the Provident Life & Trust Company, the mortgage being duly recorded. In default of payment, the mortgage was foreclosed, the property sold to the mortgagee, the certificate of sale assigned to the Tacoma Land & Improvement Company to which a sheriff's deed was executed and delivered, and the deed was duly recorded. Later one George L. Dick-

son purchased the property from the sheriff's grantee, and conveyed it to the appellants.

At the time the contract was filed for record, the county auditor of Pierce county kept two indexes, one for deeds and instruments affecting the title to real property, and the other for mortgages and other instruments creating liens against real property. Prior to January 14, 1895, no one general index affecting real estate was kept by the auditor of Pierce county. The respondent Williams intervened in the action, claiming a one-half interest in whatever sum was due under the contract. Samuel Isaacs and wife also intervened, claiming that their deed did not transfer their interest in the contract. The trial court held that their deed passed their interest in the contract, and they have not appealed. It is admitted that the appellants have constructed a four-story building on lot 22 and used the party wall as one of its sides. A decree was entered, giving to the plaintiffs Biggs a lien for one-half of the cost of the party wall, and to the respondent Williams the remainder. The defendants have appealed.

The complaint alleges that the appellants, by "mesne conveyances, . . . became the owners in fee of said lot 22, . . . subject to the lien of paying for the said party wall according to the terms of said party-wall agreement, and the said defendants became the owners of said property with full knowledge of the existence of said party-wall agreement and of all its covenants and conditions." The answer states that "these defendants admit that they became the owners of said lot with knowledge of the existence of said alleged agreement and of its covenants and conditions." Similar allegations and admissions are contained in the complaint in intervention of the respondent Williams and the appellants' answer to the same. The record is silent as to whether any of the appellants' grantors had *actual* notice of the contract. Upon the facts admitted by the answer, the respondents contend that the burden was upon the appellants to prove that

some one of their predecessors in title was a *bona fide* purchaser, without notice of the contract. We think this view is sound. The appellants having purchased the property with actual notice, the property is liable for the payment of the lien, unless they can show that the property was freed from the lien by want of notice to some predecessor in title. It is elementary that a purchaser without notice of a lien can convey the property free from the lien to one who has notice. Natural justice demands that the appellants should either discharge the lien, or produce facts sufficient in law to relieve the property from the obligation. If there was no admission of actual notice to the present owner of the lot charged with the lien, the burden would, no doubt, be upon the respondents to show that the appellants and each of their grantors had actual notice. We think, however, upon the admitted facts, the burden shifts to the appellants to prove the excusatory facts.

This view is not only, as we think, sound in principle, but finds support in the decided cases. In *Griffith v. Griffith*, 9 Paige 315, Chancellor Walworth, in discussing the precise question, said:

"His Honor, however, based his decision, in favor of the respondents, upon the ground that Henderson, from whom they purchased, was a previous bona fide purchaser without notice. The answer of the respondents, I think, was sufficient to set up this defense of a bona fide purchase by their grantor. It is well settled that a defendant who is himself chargeable with actual or constructive notice of the complainant's equitable claim, at the time of his own purchase of the premises, may nevertheless protect his title by showing that his grantor was a bona fide purchaser without notice."

In *Dey v. Dunham*, 2 Johns. Ch. 182, Chancellor Kent, speaking of the principle upon which a purchaser with actual notice takes subject to the rights of one claiming under an unrecorded instrument, said:

"The ground of the numerous decisions on this subject

seems to be, the actual fraud of the party in taking a second conveyance with knowledge of the first, and with intent to defeat it."

The same view is announced in *Smith v. Yule*, 31 Cal. 180, 89 Am. Dec. 167. So, in this case, the taking of the deed with actual notice was *prima facie* a' fraud upon the rights of the respondents, and in the absence of excusatory facts, is conclusive upon the appellants. When the appellants purchased they either had, or did not have, knowledge that some one of their grantors was an innocent purchaser. The appellants further urge that *Hawkes v. Hoffman*, 56 Wash. 120, 105 Pac. 156, is conclusive in their favor. In that case it was conceded that one of the grantees in the chain of title had no notice.

The view we have taken of the question of actual notice makes it unnecessary to determine whether the recording acts have been complied with so as to make the contract impart constructive notice. That question may become one of great importance, and is not necessarily involved in this case.

The appellants next contend that the court erred in holding that the interest of Samuel Isaacs and wife in the contract passed by their deed to their grantees. The court followed the rule announced by this court upon the same facts, in *Hoffman v. Dickson*, 47 Wash. 431, 92 Pac. 272, 93 Pac. 523, 125 Am. St. 907. Moreover, if, as the court decreed, the Isaacs had no interest in the contract, the respondents are the entire owners, and the appellants are not injured. As we have seen, the Isaacs have not appealed.

The contention that the filing of a *lis pendens* in the foreclosure proceeding removed the lien created by the contract cannot be upheld. The respondents were not parties to the foreclosure suit. As we have pointed out, there is no evidence as to whether the mortgagee had notice of the contract, and what we have said as to the duty of the appellants

to meet the equity of which they knew, or show their excuse for not meeting it, disposes of this contention.

The decree is affirmed.

RUDKIN, C. J., PARKER, MOUNT, and FULLERTON, JJ., concur.