Bradley, J.
The deeds of conveyance apparently vested the title in the defendant’s lessor. But it is contended on the part of the plaintiff that he has taken title by adverse possession for the requisite time of himself and those through whom he took his conveyance; that at all events the evidence was sufficient to permit' the jury to so find, and that their finding in that respect was supported by it! And, first, it is claimed that the possession of the grantor of the old railroad company was adverse to its title from and after the time it ceased to operate the road, and until his death. In support of that view it was proved that in 1855 tins strip was within the fences which enclosed his farm, and as part of it for pasturage. This was done by the line fence between his lands,and those of others, extending across the north and south ends of the land in question, which had not been and was not then otherwise enclosed by any fence. These fine fences remained there, with the exception of being opened a short time for a temporary purpose, continuously from that time until the defendant’s^ lessor proceeded to reconstruct the road in 1880.
There is no evidence, other than that derived from the maintenance of these fine fences and the use of the land in common with the other and adjacent portions of the farm for pasturage, of adverse possession by such grantor during his life. The occupation is presumed to have been under the legal title until the possession is proved to have been adverse to such title. 2 R. S., 293, § 8; Old Code, § 81; Code Civil Pro., § 368.
And to overcome that presumption the possession must be under a claim of title evinced by acts open, notorious and consistent, only with such claim, exclusive of every *134 other right and continuous. And when the claim of title is not founded on a written instrument, the land must be protected by a substantial inclosure or usually cultivated or improved by the occupant to constitute adverse possession. Code Civil Pro., § 372; Old Code, § 83. The maintenance by him of the line fences, and the manner in which the land was used, did not necessarily indicate a claim by him in hostility to the legal title of his grantee. These fences were essentially convenient for the enjoyment by him of the use of the adjacent portions of his farm, and it would have been a matter of inconvenience to exclude his stock in the pasture from the land he had conveyed. This situation in view of the fact that he had conveyed the land to the company was, we think, insufficient to warrant the conclusion of adverse possession. Doolittle v. Tice, 41 Barb., 181; Yates v. Van De Bogert, 56 N. Y., 526.
The old company did not fence this strip conveyed to it, but left it open and unseparated from the field through which it extended, in which condition it remained during 'the grantor’s life. The latter continuing in possession after his conveyance would not be deemed as doing so, otherwise than in subserviency to the title of his grantee, •without a disclaimer of such relation quite explicitly in some manner made, or an assertion of right in hostility to such title clearly and notoriously indicated. Jackson v. Burton, 1 Wend., 341; Zeller’s Lessee v. Eckert, 4 How. U. S., 289; Currier v. Earl, 1 Shep., 216.
The evidence did not justify the conclusion that the plaintiff had acquired title by means of adverse possession, whatever may have been the relation in that respect of Benjamin Hewitt, as the time intermediate his death and the commencement of this action was less than twenty years.
The contention that the evidence required the submission to the jury of the question of abandonment of the premises is not supported. The grant was to the company, its successors and assigns.
The words in the habendum clause “ to have and to hold, ” etc., unto the company, its successors and assigns “for fhe uses and purposes of a railrpad and for no other purpose,” at most merely defined the use. The company took the fee. And the suspension of the use for the purposes of a railroad for a time did not ipso facto work a forfeiture, nor did the fact of the sale pursuant to the decree of foreclosure and the removal of the rails from the road-bed by the purchaser have any such effect. Arnold v. Stevens, 24 Pick., 106.
By the terms of the conveyance no condition subsequent was created, no right of re-entry reserved, nor was rever *135 sioil provided for in any event. And the effect of the provision referred to of the habendum clause, does not require any consideration for the purposes of this case.
The right of a plaintiff to recover in ejectment must rest upon the strength of his own title, unless the defendant is by estoppel denied the right to question it. The vendee taking possession under his contract of purchase is not permitted to dispute the title of the vendor for the purposes of retaining possession so derived from the latter, and to that extent the relation in effect is similar to that between lessor and lessee. And in case of default of the vendee in payment the vendor may maintain ejectment.
The plaintiff’s action is not supported by title, and the question arises whether it is by estoppel.
At the time of the conveyance by Potter to Erwin in 1876, James Braley was in possession under color of title given by a deed to him from Charles H. Hewitt, of date October 4, 1870, and it cannot as matter of law, upon the evidence, be held, that he was not holding adversely to the title under which the defendant claims. But the deed of his grantee, Jeremiah Braley, to the plaintiff of date November, 1883, excepted from the grant the rights conveyed by Benjamin Hewitt to the old company by the deed of April, 1853, conveying the land in controversy. The plaintiff’s grantor did, however, at the same time of making the deed, by an instrument in writing, assign to the plaintiff whatever claim he had against the defendant on account of “the sale, transferor delivery to it of an interest in the land in 1880, and stated in it that the claim had been adjusted at the sum of $500. This sum was not paid. And in February, 1885, the same grantor made to the plaintiff a quit-claim deed of this land.
The evidence tends to prove that in October, 1880, negotiation with the defendant, or in its behalf, or that of its lessor, was had with Braley to acquire the right to enter upon and occupy this land, and by his consent the company did go in and proceeded to reconstruct the railroad. In November of that year the deed of conveyance was made by Irwin to the defendant’s lessor of the premises. The negotiation proceeded and $500 was agreed upon as the compensation which the company was ready and offered to pay, but Braley declined to receive it. This for the time being closed the negotiation, which was resumed with the plaintiff after the assignment to him. And the defendant declined to pay the sum before mentioned. Thereafter the plaintiff took the quit-claim deed and brought this action.
This situation presents a question not free from difficulty. But we are inclined to think that the deed to the defendant’s lessor cannot be treated as champertous,
*136 The grantee was then in possession, and although it went in by the consent of Braley, the negotiation with him resulted in no agreement binding upon the parties and he declined to give effect to the oral arrangement made. The defendant became lessee in September, 1881, and at the time of its ineffectual negotiation with the plaintiff the latter had neither the title or the possession of this land. The defendant was then occupying it and operating the railroad as lessee, and such was the situation when the plaintiff took the quit-claim deed upon which he relies for his title.
We are inclined to think the defendant is not denied the right to assert as a defense that the plaintiff took no title by that deed to the land in question.
If that view is correct, the plaintiff was not entitled to recover, and the order should be affirmed.
Barker, P. J., and Haight, J., concur.